IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DALYCE NIELSON, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 06-385-S-LMB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY | ) | **AND ORDER** |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| —————————————————— | ) | |

Currently pending before the Court is Dalyce Nielson's Petition for Review,[1] seeking review of the Social Security Administration's decision to deny her claim for Title II Social Security disability benefits and Title XVI Supplemental Security Income payments. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

Dalyce Nielson ("Petitioner") applied for Supplemental Security Income payments on November 27, 2002 and for Social Security disability benefits on January 9, 2003. Both claims were denied initially and, again, on reconsideration. Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On March 31, 2005, ALJ Hayward C. Reed held a hearing in Boise Idaho, at which time Petitioner appeared and testified, represented

---

[1]  Petitioner inadvertently labeled her opening brief as a reply brief; however, it is more appropriately considered her Petition for Review.  Pet.'s Brief (Docket No. 11).

**MEMORANDUM DECISION AND ORDER - 1**

by counsel.  Also appearing and testifying were Dr. James Bruce, medical expert, and Dr. Polly Peterson, vocational expert.

On September 21, 2005, the ALJ issued a decision denying Petitioner's claims. Specifically, the ALJ found that Petitioner's alcohol and/or drug dependencies are contributing factors to her disability determination; in other words, the ALJ concluded that Petitioner would not be considered disabled if her alcohol and/or drug use ceased.  (AR 29).  Petitioner timely requested review by the Appeals Council on November 12, 2005.  On July 27, 2006, the Appeals Council denied Petitioner's Request for Review of Hearing Decision/Order, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely filed the instant action. Relative to this proceeding, Petitioner argues that the ALJ erred: (1) in finding that drug abuse was material to Petitioner's disability; (2) in rejecting the opinion of Petitioner's treating physician; and (3) in finding that Petitioner was capable of performing a limited range of light work.  Pet.'s Brief, p. 8 (Docket No. 11).  Petitioner therefore requests that the ALJ's decision be reversed and benefits awarded to Petitioner.  *Id*. at p. 19.  In the alternative, Petitioner asks that the case be remanded for another hearing and proper evaluation of the evidence.  *Id*.

## II.  STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20 C.F.R. §§ 404.1520, 416.920.  The second part of that process involves a determination regarding whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a).  If no

**MEMORANDUM DECISION AND ORDER - 2**

"severe" impairment is found, the claimant will be found not to be disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel.*

**MEMORANDUM DECISION AND ORDER - 3**

*Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See Id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id.* at 1095 (citation omitted).

The issue presented in the instant appeal is whether the ALJ's findings (and, later, the Appeals Council's findings) that Petitioner was not disabled is supported by substantial evidence, based on the application of proper legal standards.

### III.  DISCUSSION

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. However, an otherwise disabled individual is not entitled to disability benefits under the Social Security Act if the Commissioner determines that drug

**MEMORANDUM DECISION AND ORDER - 4**

addiction or alcoholism is a contributing factor material to any corresponding disability determination. *See* 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled"); *see also* 42 U.S.C. § 1382c(a)(3)(J).

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity at any time relevant to the underlying inquiry. (AR 29).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is no, disability benefits are denied. 20 C.F.R. § 404.1520(c). Here, Petitioner's substance abuse disorder, bipolar disorder, diabetes, hepatitis C, sleep apnea, fibromyalgia, obesity, and thyroid disease were found to be considered "severe" under the applicable regulations. (AR 29).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is in the affirmative, the claimant is disabled and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). In this respect, the ALJ concluded that Petitioner's substance abuse disorder and affective disorder, in combination, met the criteria established to qualify for a "listed" impairment. (AR 29). As a consequence, the ALJ recognized that Petitioner is to be considered "disabled." *Id*.

**MEMORANDUM DECISION AND ORDER - 5**

However, as previously mentioned, a finding of disability does not automatically entitle one to disability benefits.  If medical evidence of drug addiction or alcoholism exist in an otherwise disabled person, the ALJ is then tasked with determining whether the claimant would still be disabled absent the abuse of alcohol or drugs.  *See* Pet.'s Brief, p. 9 (Docket No. 11) (citing *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001)).  Here, the ALJ concluded that, absent substance abuse, Petitioner would not have an impairment (or combination of impairments) that would meet or medically equal the criteria established for any of the qualifying impairments.  (AR 26).  Therefore, the ALJ resumed the final steps of the sequential process.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Even when considering the impairments and limitations that would remain if Petitioner stopped using substances, the ALJ concluded that Petitioner has the residual functional capacity to (1) lift and/or carry a maximum of twenty (20) pounds occasionally and can lift and/or carry ten (10) pounds frequently; (2) "sit, stand, and/or walk, with normal breaks," up to six (6) hours in an eight (8)-hour day; (3) push and/or pull with no restrictions; (4) balance and stoop, occasionally climb stairs, kneel, crouch, or crawl (but should avoid climbing ladders, ropes, or scaffolds); and (4) perform routine, repetitive, one and two-step tasks that do not have production requirements.  (AR 29).  In short, the ALJ determined that Petitioner is capable of performing a limited range of light work.  *Id.*

Comparing Petitioner's above-referenced residual functional capacity against her past relevant work as a cashier/clerk, convenience store cashier, and interviewer, the ALJ found that

**MEMORANDUM DECISION AND ORDER - 6**

she was able to perform certain past relevant work.  *Id*.  Because the ALJ found that Petitioner

was able to perform past relevant work despite her exertional and non-exertional limitations, it

was not necessary for him to demonstrate that Petitioner was able to do alternate work and that

such alternate work existed in significant numbers in the national economy.  Thus, the ALJ

concluded that Petitioner is not disabled as defined by the Social Security Act.  *Id*.

**B.     Analysis**

Petitioner argues that the ALJ (1) mistakenly found that her drug abuse was a material

factor in his disability determination, (2) failed to properly consider and apply the opinions of

her treating psychiatrist, Sandra MacDonald, M.D., and (3) failed to properly substantiate his

residual functional capacity finding.  Pet.'s Brief, pp. 9, 14, & 16 (Docket No. 11).

1.     <u>The Effect of Petitioner's Drug Abuse on a Finding of Disability</u>

The ALJ found Petitioner to be disabled.  (AR 29).  Still, as Respondent correctly points

out, the Commissioner's disability regulations state that "[i]f we find that you are disabled and

have medical evidence of your drug addiction or alcoholism, we must determine whether your

drug addiction or alcoholism is a contributing factor material to the determination of disability."

Resp. Brief, p. 6 (citing 20 C.F.R. §§ 404.1535(a), 416.935(a)).  Put another way, the

Commissioner is to consider "whether we would still find you disabled if you stopped using

drugs or alcohol."  *Id*. (citing 20 C.F.R. §§ 404.1535(b), 416.935(b)).

If, as a result of this somewhat hypothetical but necessary inquiry, it is determined that

any remaining limitations are not disabling, the at-issue drug addiction or alcoholism is a

contributing factor material to the determination of disability and disability benefits will be

denied.  Thus, the inquiry here is whether Petitioner would still be considered "disabled"

**MEMORANDUM DECISION AND ORDER - 7**

notwithstanding her drug abuse.  The ALJ answered this question in the negative.  Petitioner

disagrees with this finding.

Petitioner's argument in this respect appears to center on the fact that she not only

experienced episodes of abstinence from drugs and alcohol, but that during these same episodes,

she had severe mental and physical impairments.  Pet.'s Brief, pp. 10-12 (Docket No. 11).  The

ALJ, however, does not entirely disagree.[2]  Indeed, the ALJ acknowledged in no uncertain terms

that "[Petitioner] did have periods of sobriety historically, which were followed by relapses back

into drug use."  (AR 25).[3]  However, the record suggests that, while sober, Petitioner was, in

fact, capable of working full time.  During a psychiatric consultation, Jaralyn Jones, M.D., noted:

> She says this last relapse occurred when she was overwhelmed with
> working full time and going to school as well and didn't have enough
> time to take care of everything.  It was during this most recent
> relapse, that her older son chose to go live with his father.

(AR 273).  The ALJ's consideration of such evidence, therefore, contradicts Petitioner's

argument that "it would be impossible for the ALJ to get a true picture of her limitations without

the use of illegal drugs" and "[t]he ALJ assumed that Petitioner's symptoms from her mental

condition would improve if she stayed completely clean and sober."  See Pet.'s Brief, p. 12

---

[2]  Petitioner correctly points out the shortcoming in Respondent's conclusory statements
that "[t]he ALJ properly concluded . . . ." that Petitioner's drug abuse was material to her
disability finding.  Pet.'s Reply Brief, p. 2 (Docket No. 14).  While perhaps true, more is needed
from Respondent to support adequately such a proposition.

[3]  Petitioner attempts to dismiss her relapses by stating: "Relapse is a fact of life for drug
and alcohol addicts.  It is a rare individual who can manage to never touch the substance again."
Pet.'s Brief, p. 10 (Docket No. 11).  These statements underscore the difficulty in maintaining an
extended period of sobriety, however they do not operate to discount the fact that Petitioner has a
history of drug abuse that must be considered by the ALJ in making his disability determination.

**MEMORANDUM DECISION AND ORDER - 8**

(Docket No. 11) (Underline in original).  Rather, the ALJ was able to look to Petitioner's history for the purpose of determining whether Petitioner was capable of working, and therefore not disabled, during those times she was not abusing drugs.

This record evidence is further buttressed by the testimony of James Bruce, Ph.D., an impartial medical witness.  During the March 31, 2005 hearing, Dr. Bruce concluded that Petitioner's substance abuse negatively impacted her ability to function, finding that, during periods of sobriety, Petitioner maintained an ability to work with only mild to moderate limitations in daily activities and social functioning.  (AR 666-668).[4]

Moreover, it is important to keep in mind that, by considering the Petitioner's drug abuse to be a material factor in her disability, the ALJ is not likewise concluding that Petitioner is without any impairment whatsoever.  In this respect, Petitioner highlights her apparent physical difficulties, independent of her drug use.  Pet.'s Brief, pp. 11-12 (Docket No. 11).  However, the ALJ acknowledged that, even without substance abuse:

> the [Petitioner] would continue to have severe impairments which would cause significant limitations to her ability to perform work-related activities.  These significant limitations were taken under consideration within the residual functional capacity, which allows for many of her subjective complaints and limitations, including cognitive and social deficits.

(AR 27).[5]

---

[4]  Dr. Bruce's finding in this respect is not unique.  Richard T. Sonnenberg, Ph.D., likewise inferred that Petitioner was capable of work when not abusing drugs.  (AR 247) ("When active in her drug abuse behavior, the behavior would seem to interfere significantly with daily activities and work.")

[5]  While the residual functional capacity assessment takes into consideration a claimant's subjective complaints, the ALJ found that Petitioner's "subjective complaints regarding the severity of limitations caused by [her] non-substance related impairments are considered not

**MEMORANDUM DECISION AND ORDER - 9**

Thus, as is appropriate, the ALJ is not disregarding Petitioner's impairments that exist independent of her substance abuse history.  *Id*.  Indeed, these impairments were taken into consideration when he later opined on Petitioner's residual functional capacity to perform her past relevant work and, if it was necessary, alternate employment opportunities that exist in significant numbers within the national economy.  *Id*. ("The undersigned finds that, absent substance use, the claimant would have exertional, and non-exertional limitations which would

_____

fully credible to the extent alleged." (AR 27).  The ALJ is in the best position to make such credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight.  *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  However, although the ALJ is responsible for determining Petitioner's credibility, he cannot reject her testimony without giving clear and convincing reasons.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.  For example, the ALJ highlighted Petitioner's repeated failure to follow the advice and recommendations of medical personnel.  (AR 21-23); *see* 20 C.F.R. §§ 404.1530, 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Another such form of evidence [to discredit pain testimony] is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."); *Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (9th Cir. 1988).  The ALJ also pointed to Petitioner's apparent drug-seeking behavior in his contact with various physicians. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (supporting ALJ's finding of exaggerated complaints of physical pain in order to receive prescription pain medication to feed drug addiction).  Finally, Petitioner's lack of candor to her treating physicians (e.g., denying hospitalization for drug treatment when, in fact, she was hospitalized for a heroin overdose (AR22)) did not buttress Petitioner's credibility when later discussing the severity, intensity, and duration of her pain at the March 31, 2005 hearing.  Together, these reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner entirely credible.  This is not to say, however, that this Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations or that Petitioner does not suffer from chronic pain; indeed, as expected, Petitioner identifies conflicting evidence in support of her position.  While such conflicting evidence may not have been given the weight Petitioner would have preferred, it is clear that the ALJ's decision to doubt Petitioner's credibility is not without clear and convincing reasons for doing so.  As required by controlling law, the ALJ will not be second-guessed here. *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (Internal citations omitted)).  Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

**MEMORANDUM DECISION AND ORDER - 10**

affect her ability to work.  In evaluating the claimant's residual functional capacity, it must be determined what her maximum remaining ability is to perform sustained work activities in an ordinary work setting on a regular and continuing basis.")

Without definitively commenting on whether Petitioner's substance abuse history was material to a disability determination, the record, coupled with Dr. Bruce's testimony, offers the substantial evidence necessary to support the ALJ's conclusion that Petitioner would not be considered disabled if she stopped using drugs or alcohol.  While the ALJ's interpretation of the evidence in this regard is not the only possible interpretation, it is supported by evidence which this Court is not in a position to interfere.

    2.    <u>The Opinions of Petitioner's Treating Physician</u>

The ALJ concluded that Petitioner was not under a disability at any time through the date of his decision.  (AR 28).  Understandably, Petitioner takes issue with this finding, concurrently pointing to various instances in the record where her treating physician, Sandra MacDonald, Ph.D., comments on the alleged severity of her mental condition, concluding that Petitioner met Listing 12.04.  Pet.'s Brief, pp. 14-15 (Docket No. 11).

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight.  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual."  *Id*.  However, a "treating physician's opinion on the ultimate issue of disability is not necessarily conclusive."  *Id*. at 762 (citations omitted).  The treating physician's uncontradicted opinion may be disregarded by the ALJ if he sets forth "clear and convincing" reasons.  *Id*.; *see also Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 11**

1991).  If the treating physician's opinion is contradicted, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

On March 5, 2005, Dr. MacDonald diagnosed Petitioner with bipolar disorder, finding that Petitioner was (1) mildly limited in activities of daily living, (2) moderately limited in social functioning, (3) markedly limited in maintaining concentration, persistence or pace, and (4) had four (4) or more episodes of decompensation.  *See* Pet.'s Brief, p. 14 (Docket No. 11) (citing AR 552 & 559).  Presumably, had the ALJ given the weight to Dr. MacDonald's opinions as Petitioner argues is necessary, Petitioner would have a condition that meets or medically equals a listed impairment.

The ALJ acknowledged that Dr. MacDonald's diagnosis meets the severity required for Listing 12.04.  (AR 24).  However, the ALJ afforded "less controlling weight" to Dr. MacDonald's opinion in this respect due to her perceived failure "to assess a polysubstance disorder at all, although this was plainly claimant's primary issue . . . ." *Id*.  According to the ALJ, it is this polysubstance abuse that, in conjunction with her depression, "precludes her from completing a normal workday and work week, performing at a consistent pace, sustaining a routine, and interacting acceptably with co-workers and the public." *Id*.  In short, the ALJ understood that Petitioner's depression cannot be considered in isolation when determining whether she is disabled; instead, Petitioner's polysubstance abuse must be taken into account as well, something Dr. MacDonald ostensibly did not do when filling out the March 5, 2005 "Psychiatric Review Technique."  (AR 549-566).  In contrast, the balance of Petitioner's medical record reveals the importance of Petitioner's drug abuse to her underlying mental condition.

**MEMORANDUM DECISION AND ORDER - 12**

Following a June 2004 overdose, Petitioner was treated by Damiana Uberuaga, a clinical social worker, on July 20, 2004.  (AR 531).  At that time, Ms. Uberuaga unequivocally stated that "[d]rugs and alcohol are <u>huge</u> issues with Dalyce."  *Id*. (Emphasis added).  Not surprisingly, Ms. Uberuaga diagnosed Petitioner with polysubstance abuse and major depressive disorder.  *Id*.

Over the course of the next several months, it appeared that Petitioner's improved depressive condition corresponded with periods of sobriety.  By October 20, 2004, Petitioner was volunteering; she was also "doing better" and "does not appear as depressed," according to Ms. Uberuaga.  (AR 513).  At that time, it was further noted that one of Petitioner's objectives was "[t]o score less than 25 on the Beck depression . . . ."  *Id*.  Notably, one month later, Petitioner scored a 13 on her Beck Depression Inventory which, according to Ms. Uberuaga, indicated that Petitioner was only "very mildly depressed" and that "her mood is much more stable."  (AR 508).  The ALJ appropriately considered such insight as evidence of the correlative effect of Petitioner's drug abuse to any disability determination.

Combined with the testimony from Dr. Bruce as well as the treatment notes from Dr. Sonnenberg (*see supra* at p. 9), it is further apparent that evidence exists in the record highlighting the importance of Petitioner's substance abuse, particularly as it relates to her depression and any related impairments therewith.  Thus it is within the ALJ's discretion to question the disability determination offered by Dr. MacDonald's Psychiatric Review Technique (Exhibit 24F) when it is silent as to Petitioner's understood polysubstance abuse.

Therefore, it cannot be said that the ALJ improperly disregarded Petitioner's medical history generally, and Dr. MacDonald's opinions specifically, when the ALJ considered the treatment notes of several practitioners, alongside the testimony of Dr. Bruce during the March

**MEMORANDUM DECISION AND ORDER - 13**

31, 2005 hearing.  At times, the evidence is contradictory.  At other times, the evidence is merely ambiguous.  It is not this Court's duty to resolve those ambiguities; that is the task assigned to the ALJ.  In this light, it would be incorrect to state that the ALJ's findings are without justification.  The record supplies substantial evidence of the clear and convincing  reasons supporting the ALJ's decision which the Court is not in a position to interfere.

   3.  <u>The ALJ's Residual Functional Capacity Assessment</u>

   In evaluating an impaired claimant's residual functional capacity, it must be determined what his/her maximum remaining ability is to perform sustained work activities in an ordinary work setting on a regular and continuing basis.  *See* Social Security Ruling 96-8P.  Further, the residual functional capacity findings must be supported by specific references to the record and the ALJ must "make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC."  *Id*.  Here, the ALJ found that Petitioner can (1) lift and/or carry a maximum of twenty (20) pounds occasionally and can lift and/or carry ten (10) pounds frequently; (2) sit, stand, and/or walk, with normal breaks, up to six (6) hours in an eight (8)-hour day; (3) push and/or pull with no restrictions; and (4) frequently balance, stoop, and occasionally climb stairs, kneel, crouch, or crawl.  (AR 27-28).  Petitioner argues that the above-referenced sit/stand limitation posed to the vocational expert actually eliminated all of Petitioner's past relevant work experience and, instead, supported a limitation to sedentary work - a situation considered by neither the ALJ nor the vocational expert.  Pet.'s Brief, pp. 17-18.  Although Respondent fails to squarely address Petitioner's argument, it nonetheless is without merit.

   Petitioner's approach to the hypothetical posed to the vocational expert ignores the actual residual functional capacity limitations reached by the ALJ.  That is, the ALJ assumed that

**MEMORANDUM DECISION AND ORDER - 14**

Petitioner, even when considering her exertional and non-exertional limitations, could stand/walk for two (2) hours and sit for six (6) hours in an eight (8)-hour day when he questioned the vocational expert.[6]  (AR 671 ("Stand and/or walk two hours.  Sit, I'd say about six hours in an eight-hour day . . . .  Allow[ing] for periodic alternate sitting and standing to relieve pain and discomfort")).  With this assumption in mind, the vocational expert found Petitioner to be capable of performing her past relevant work as an interviewer, convenience store cashier, and cashier clerk.[7]  (AR 673).

Yet, Petitioner's follow-up questions to the vocational expert succeeded in highlighting the ambiguous distinctions made in the stand/walk/sit criteria for determining Petitioner's ability to perform past relevant work.  Specifically, when questioning the vocational expert, Petitioner's counsel assumed, for the sake of her own hypothetical, that when Petitioner would "get up and move around" during the six (6) hours of time allotted to sit, "that would be inclusive in the two hours of being on [her] feet."  (AR 674).  Although rational, the record does not necessarily support such a strict assumption.  An equally plausible interpretation is that, the sit/stand period of six hours contemplates the occasional alternation of sitting and standing to relieve discomfort

---

[6]  It should be noted that the ALJ's hypothetical contemplates a combined sit/stand/walk period of eight (8) hours while his noted residual functional capacity amounts to only six (6) hours.  Not only is this latter period inconsistent with the overall tenor of the ALJ's decision, it contradicts the reality that a residual functional capacity assessment necessarily assumes an eight (8)-hour work day and, most importantly, is inconsistent with the "Physical Residual Functional Capacity Assessment" (Exhibit 16F) that incorporates a combined sit/stand/walk period of eight (8) hours.  The ALJ's oversight in this respect will be excused as harmless error and, instead, interpreted to mean a combined sit/stand/walk period of at least eight (8) hours.

[7]  The vocational expert acknowledged that, due to Petitioner's "need for a sit/stand option" (a condition incorporated into the ALJ's hypothetical), the cashier clerk occupations would be reduced by half.  (AR 672).  Nonetheless given the "huge" range of such occupations, such positions exist in significant numbers in the national economy.  (AR 672-673).

**MEMORANDUM DECISION AND ORDER - 15**

- all within the prescribed six (6)-hour time period.  Indeed, that is how the limitation was interpreted by the vocational expert and later clarified to Petitioner's counsel.  (AR 674).

Further, Petitioner mistakenly states that "[a] limitation of sedentary work . . . is further supported by the findings of the Disability Determinations consultative examiner[,] . . . limit[ing] Petitioner to standing and/or walking no more than two hours out of an eight-hour day . . . ." Pet.'s Brief, p. 18 (Docket No. 11) (Emphasis added).  But the Physical Residual Functional Capacity Assessment clearly states that Petitioner can stand and/or walk (with normal breaks) for a total of "at least 2 hours in an 8-hour workday" and sit (with normal breaks) for "about 6 hours in an 8-hour workday."  (AR 354).  Therefore, to state that the vocational expert's testimony is in line with the Disability Determinations consultative examiner is not entirely accurate.

Despite the confusing nature in the way the ALJ presented Petitioner's residual functional capacity to the vocational expert, substantial evidence nonetheless exists toward supporting the ALJ's conclusion that Petitioner is capable of performing some of her previous work.  While others may have presented questions a bit differently to the vocational expert, that does not compel the substitution of this Court's opinion for that of the ALJ's opinion in this respect.

## IV.

### CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

**MEMORANDUM DECISION AND ORDER - 16**

I am of the opinion that the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  In fact, if I had been the finder-of-fact, I may well have reached a different conclusion; but that is not the function of a federal judge reviewing a Social Security determination.

Accordingly, the ALJ's decisions as to Petitioner's disability and residual functional capacity to work were based on proper legal standards and supported by substantial evidence. Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V.

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.



DATED:  **March 26, 2008**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**